UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| MELVIN PETERS et al., ) | |
| ) | |
| Plaintiff, ) | Case No. 4:05-cv-53 |
| ) | |
| v. ) | Honorable Robert Holmes Bell |
| ) | |
| RANDY DEWEERD et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## OPINION

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by state prisoners Melvin Peterson and James Berry.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) ("PLRA"), "no action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Because Plaintiffs have failed to demonstrate exhaustion of available administrative remedies, the Court will dismiss their complaint without prejudice.

### Discussion

I.      Factual allegations

Plaintiffs are presently incarcerated at Cooper Street Correctional Facility, but the events giving rise to their complaint occurred while they were incarcerated at the Michigan Department of Corrections (MDOC) Technical Rule Violation (TRV) Center in Lake County.  In their *pro se* complaint, Plaintiffs sue the following state employees: Sergeant Larry Deweerd, Nurse

Larry Trombley, Parole Agent Donna Ball, Parole Agent/Grievance Coordinator Gary Holmstrom, Warden Sheila Genter, and MDOC Director Patricia Caruso.

Plaintiffs' complaint concerns their removal from the TRV program. The TRV program provides an alternative placement for eligible parolees charged with technical violations who would otherwise be returned to a Correctional Facilities Administration (CFA) institution for parole revocation proceedings, and for eligible prisoners on Community Residential Programs (CRP) who would otherwise be reclassified to a CFA institution. MICH. DEP'T. OF CORR., Policy Directive 06.03.104. The TRV program provides up to ninety days of intensive supervision to attempt to refocus an offender's attitudes and goals toward a successful completion of community supervision. *Id.* at ¶ A. An offender may be removed from the TRV program and returned to a CFA facility for a variety of reasons, including the failure to meet eligibility criteria for participation in the program. Id. at ¶ U(1). Upon successful completion of the TRV program, all parole violation charges are dismissed and the parolee is returned to active parole in the community. *Id.* at ¶ W.

After committing technical parole violations in 2004, both Plaintiffs were sent to the Lake County TRV Center. Plaintiffs claim that they were denied proper medical care during their participation in the TRV program. In lieu of sending Plaintiffs to a local hospital, both Plaintiffs were transferred to the Southern Michigan Correctional Facility in Jackson for further medical treatment.[1] As a result, Plaintiffs' participation in the TRV program was terminated and their parole was revoked. Plaintiffs contend that Defendants conspired to discriminate against African-American TRV participants by transferring them to a prison for medical treatment, while white TRV participants were transferred to a local hospital for treatment and then permitted to complete the

---

[1] A parolee is not eligible for participation in the TRV program if he has a physical or mental condition not consistent with the rigorous demands of the TRV program. Policy Directive 06.03.104, ¶G(4).

- 2 -

TRV program. Plaintiff Peters further claims that Defendants transferred him to the Southern Michigan Correctional Facility, a security level V facility[2], in retaliation for his complaints of racial discrimination. At the time of his transfer, Plaintiff Peters had only five days remaining to complete the TRV program.

Because Plaintiffs were prevented from completing the TRV program as the result of Defendants' alleged discriminatory conduct, Plaintiffs seek reinstatement of their parole status.

II.     Lack of exhaustion of available administrative remedies

Plaintiffs have failed sufficiently to allege and show exhaustion of available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. A district court must enforce the exhaustion requirement *sua sponte*. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available. *Brown*, 139 F.3d at 1104. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the Court may determine what claims, if any, have been exhausted. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). In addition, a prisoner must specifically mention the

---

[2]The categories of security classifications in CFA institutions are Levels I through VI and segregation. Level I is the least secure level; segregation is the most secure. MICH. DEP'T OF CORR., Policy Directive 05.01.130, ¶ B (eff. March 1, 2004).

- 3 -

involved parties in the grievance to alert the prison officials to the problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Thomas v. Woolum*, 337 F.3d 720, 735 (6th Cir. 2003); *Vandiver v. Martin*, No. 02-1338, 2002 WL 31166925, at *2 (6th Cir. Sept. 27, 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance.").

A. **Plaintiff Peters**

The MDOC provides a three-step prison grievance process. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E (may grieve "alleged violations of policy and procedure or unsatisfactory conditions of confinement") (effective 4/28/03). Plaintiff Peters generally asserts that he filed grievances in an attempt to exhaust his administrative remedies. He also claims that Defendants "obstructed and hindered plaintiffs attempts to resolve step 1, and step 2 grievance processes in an effort to interfere with step 3 process . . . " An allegation that remedies have been exhausted is not enough, as a plaintiff must provide the decisions reflecting the administrative disposition of his claims or other evidence showing that he has exhausted his remedies. *Knuckles El*, 215 F.3d at 642; *Williams v. McGinnis*, No. 98-1042, 1999 WL 183345, at *1 (6th Cir. March 16, 1999). Plaintiff Peters did not provide the court with copies of any Step I grievances or grievance appeals, nor has he specifically described the issues and individuals that he grieved or attempted to grieve. As a result, the Court is unable to determine which claims, if any, he exhausted against the named Defendants. Moreover, Plaintiff Peters' vague allegations that Defendants "obstructed" or "hindered" the grievance process are insufficient to show that the grievance process was unavailable to him.

B.     **Plaintiff Berry**

Plaintiff Berry filed a supplement to the complaint that included a grievance he filed on February 3, 2005, concerning his removal from the TRV program. *See* MPF 02-02-00101-24Z (docket #5).  In his Step I grievance, Plaintiff claimed that he was medically cleared for the TRV program and that Nurse Trombley made an "arbitrary an capricious" decision to termination my participation in TRV on the basis of a perceived medical condition.  Plaintiff suggested in his grievance appeals that Nurse Trombley returned him to prison instead of sending him to a local hospital in order to save money.  At most, Plaintiff Berry's grievance was sufficient to exhaust a due process claim against Nurse Trombley arising from his removal from the TRV program.  Plaintiff Berry's grievance did not allege racial discrimination by any of the named Defendants or that African-American TRV participants with medical problems were being treated differently from white TRV participants.  Accordingly, he failed to exhaust his equal protection claim.  A civil rights action containing both exhausted and unexhausted claims must be dismissed for lack of total exhaustion.  *Jones Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005).

Because the exhaustion requirement is no longer discretionary, but is mandatory, the Court does not have the discretion to provide a continuance in the absence of exhaustion.  *See Wright v. Morris*, 111 F.3d 414, 417 (6th Cir. 1997)).  Rather, dismissal of this action without prejudice is appropriate when a prisoner has failed to show that he exhausted available administrative remedies. *See Freeman*, 196 F.3d at 645; *Brown*, 139 F.3d at 1104; *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997). Dismissal for failing to exhaust available administrative remedies does not relieve a plaintiff from payment of the civil action filing fee. *Smeltzer v. Hook*, 235 F. Supp. 2d 736, 746 (W.D. Mich. 2002) (citing *Omar v. Lesza*, No. 97 C 5817, 1997 WL 534361, at *1 (N.D. Ill. Aug. 26, 1997)).  Accordingly, the Court will dismiss Plaintiffs' action without prejudice.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court will dismiss Plaintiffs' action without prejudice because they have failed to show exhaustion as required by 42 U.S.C. § 1997e(a).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

A Judgment consistent with this Opinion will be entered.


Dated:      July 27, 2005                     /s/ Robert Holmes Bell
                                              ROBERT HOLMES BELL
                                              CHIEF UNITED STATES DISTRICT JUDGE